1821.

THOMPSON
v.
TAPPEN.

---

### D. THOMPSON *against* TAPPEN and Wife.

This Court cannot interfere with the law of descent of real property, or the established order of distribution of personal property, for the purpose of shifting the burden of paying the debts of the intestate, from the personal to the real estate, or to correct any alleged hardship or inequality produced by the law.

*August* 31st.

THE bill stated, that *James Thompson,* deceased, a brother of the plaintiff, came to the *United States,* an alien, in 1798, and was naturalized in 1813. That *Alexander Thompson,* deceased, a brother of the plaintiff, came to the *United States,* an alien, in 1801, and was naturalized in 1810. *That the plaintiff* came to the *United States* in 1804,

an alien, and still remains an alien. That *William Thompson*, a brother of the plaintiff, came to the *United States*, an alien, in 1816, and is still an alien. That *Ann*, a sister of the plaintiff, came to the *United States* an alien, in 1818 and still remains an alien. That *J.* and *A. Thompson*, in 1813, entered into partnership, as distillers, in *New-York*, and continued partners until the death of *Alexander T.* on the 30th of *January*, 1818. That while partners, they acquired a considerable estate, the greater part of which was vested in real property in their joint names. That they purchased in 1816, real property in *Cherry* and *Batavia* streets, including their distillery, and paid therefor 10,250, dollars, and took a deed in their joint names, and they borrowed from *John Pirnie*, money towards payment for the land in *Cherry* and *Batavia* streets, on their joint notes, and afterwards secured the payment thereof by a bond and mortgage. That in 1817, *J.* and *A. T.*, out of the profits of their joint concern, purchased another real estate in fee, in *Orange* and *Cross* streets, for which they paid 8,000 dollars, and upwards, and took a deed to them jointly, in fee. That *A. T.* died *intestate*, the 30th of *January*, 1818, leaving a wife still living, but no issue, and three brothers, (one of whom was the plaintiff,) and a sister. That the *plaintiff* and *James T.* then entered into, and continued their partnership, as distillers, until the death of *James T.*, on the 12th of *July*, 1818. That *James T.* died intestate, leaving *Sarah*, (defendant,) his widow, and leaving two children, and two brothers, (one of whom is the plaintiff,) and a sister. That administration of the goods of *Alexander T.*, was granted to his widow *and the plaintiff*. That the plaintiff acted faithfully as administrator, and also managed the estate of *James T.*, after his death, with the approbation of *Sarah* his widow, who was his administratrix. That *James* and *Alexander T.* on the 22d of *August*, 1817, in order to take up the notes given to *John*

*Pirnie*, for moneys to pay for the lands in *Cherry* and *Batavia* streets, and for some other small sums due to him, gave him jointly, a bond and mortgage of the lands in *Orange* and *Cross* streets, to secure 4,500 dollars. That the plaintiff paid to *John P.* the interest of the mortgage. That the widow and children of *James Thompson*, claim not only their father's moiety, so purchased by *Alexander* and *James T.*, in the said real estate, but also, the moiety of *Alexander T.* in the said real estate (as the plaintiff and his brother and sister are aliens,) subject to his widow's dower. *That the plaintiff is obliged to acquiesce in that claim.* That the defendant *Sarah*, also, insists, that the personal estate of *Alexander T.* shall be taken, and applied towards satisfaction of the bond and mortgage, so as to disencumber *the real* estate of the said *Alexander T.* in which the plaintiff and his brother and sister have no interest, but are excluded, because they are aliens ; and which exclusion does not apply to the personal estate. That the plaintiff has adjusted the partnership concerns of *Alexander* and *James T.*, so far as to ascertain that whatever sum remains *in the hands of the plaintiff*, it is not sufficient to pay to the plaintiff, *William T.* his brother, and *Ann* his sister, and the widow of *Alexander*, *T.* their distributive shares of the personal estate of *Alexander T.*, after paying his debts, exclusive of the *bond and mortgage* debt aforesaid, which bond *ought to be paid by the persons entitled* to the *real estate of Alexander T.*, from which the plaintiff, and his brother and sister, are excluded. That the defendant is attempting, by a suit at law, to force the balance of the moneys of *Alexander T.* out of the hands of the plaintiff, to be applied towards payment of that bond to *John Pirnie*, and thereby applying the personal estate of *Alexander T.*, in which the plaintiff has an interest, to disencumber his real estate, in which the plaintiff has no interest ; and the defendants have commenced an action against the plaintiff for such balance.

*Prayer*, for an injunction to stay the suit at law, and for general relief.

*Bogardus*, for the plaintiff, now moved for the injunction.

*P. W. Radcliff*, contra. He cited 3 *Johns. Ch. Rep.* 312. 257. 1 *P. Wm.* 291. 1 *Atk.* 487. 1 *Madd. Ch.* 477. 3 *P. Wm.* 359.

THE CHANCELLOR denied the motion, on the ground, that the established course of descent of the real estate, and the established order of distribution of the personal estate of *Alexander Thompson*, deceased, was not a sufficient reason for shifting the burden of paying his debts from the personal to the real estate. This Court cannot, he said, undertake to interfere with the law of descent, or to endeavour to correct what may be deemed its hardship or inequalities. The cases do not afford any such principle or precedent.

Motion denied.